STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-264

DONNA L. ZEEGARS,

     Plaintiff

  v.

**DECISION AND ORDER**

BRIAN M. SYMONEVICH,
*et al.,*

     Defendant

DONALD L. ~~~~~~~~
LAW ~~~~~~~~

SEP 8 2004

This matter is before the court after a five-day bench trial. On October 28, 1996, plaintiff was the operator of a 1994 Saab 9000 standing in the northbound lane of Silver Street in the City of Waterville awaiting the passage of traffic for her to make a left-hand turn into an office parking lot. Her vehicle was rear-ended by a utility vehicle operated by defendant Brian M. Symonevich traveling approximately 30-35 m.p.h. The plaintiff's vehicle was thrust to the left 15-20 feet and the force of the collision caused extensive damage such that it was not repairable. However, the plaintiff was able to operate the vehicle sufficiently to move it into the parking area.

The mechanics of the injury to the plaintiff are not entirely clear. Plaintiff testified that at the moment of impact she was looking to her left with her head turned in that direction. However, she also testified that she observed the defendant by looking in her overhead rearview mirror. She claims the right side of her face hit the steering wheel and some significant time after the accident she described the impact such that she felt her jaw was broken but she made no mention of the impact and otherwise denied the same throughout the emergency room procedure and her visit with her personal physician the following day. It is clear that she suffered a significant

whiplash effect causing a severe soft tissue strain to her neck and upper back. There were no external signs of injury. There was no swelling, erythemia, deformity or tenderness of the facial structures. She was diagnosed by the emergency room physician as receiving a neck and back strain secondary to the motor vehicle accident without evidence of fracture, dislocations or of neurologic deficits.

On the following day, October 29, 1996, plaintiff consulted with her personal physician. She advised the doctor that her pain was located in her head, jaws, neck, arms, back, right leg and chest. The doctor noted that this was her initial visit after the automobile accident, that her symptoms had been present for 24 hours, and that the onset of her symptoms was abrupt. He noted that she had not responded well to the prescribed medication and regimen of the emergency room physician. He particularly noted there was no history of head trauma. The physician found moderate neck stiffness and a diminished range of motion in the neck. As to her back, he found tenderness in the cervical, thoracic, lumbar and sacral areas on light palpation with muscle spasms. He noted acute soft tissue changes in her cervical, thoracic, lumbar, rib cape, and sacral region but without any neurological compromise. The doctor's assessment was that she had acute myositis with spasm of the cervical musculature secondary to the motor vehicle accident and somatic dysfunction to those regions.

At a further examination by her physician on November 5th, seven days post motor vehicle accident, plaintiff complained of moderate tingling in the right upper extremities as well as moderate numbness. She complained of moderate weakness in the neck and lower back and pain in the shoulder provoked by flexion of the neck. His assessment was consistent with the previous examination. On January 9, 1997, plaintiff was examined by her doctor wherein she complained of neck stiffness with headaches and, for this first time, mentioned TMJ region pain which she claims to have had since

the accident and which was getting progressively worse. She agreed that she had stopped her physical therapy after a few visits relying upon a home exercise program. Her anxiety level had increased considerably. She had full range of motion of her jaw, no pain on clenching teeth and no pain over the bilateral TMJ. She continued to have tenderness and spasms in her back. The doctor's assessment was that she had received bilateral trapezius myositis secondary to the motor vehicle accident as well as TMJ dysfunction.

On January 23, 1997, plaintiff conferred with her physician as the result of an assault on her by her boyfriend which incident required police response. She was suffering from severe anxiety and was having pain in her neck, and upper and lower back. She showed signs of bruising in her upper extremities and neck. No further complaints were made with regard to injuries from the motor vehicle accident. On March 6, 1997, in her visit to her physician, her chief complaint was headache but she still had tenderness on light palpation of her cervical, thoracic, lumbar and sacral spinal areas. The doctor assessed her headache as secondary to the motor vehicle accident. She was seen again on April 8, 1997, complaining of pain in her jaw, severe neck pain and continued tenderness in her back.

On December 8, 1997, plaintiff conferred with her physician because of chest pain. In addition to noting the family history, the doctor observed that she remained under considerable mental stress due to her personal situation. No comment is made in the doctor's notes regarding matters pertinent to the motor vehicle accident. However, on December 30, 1997, she was seen by the doctor as a follow-up for neck, bilateral jaw, upper and lower back pain secondary to the motor vehicle accident. She had limited range of motion in her jaw secondary to pain, moderate neck stiffness with tenderness and continued tenderness present on light palpation without spasm in her

back. At that time, the doctor noted that it was his opinion that the plaintiff would continue to suffer from her ailments in the future despite further medical treatment and that provided in the past.

On February 16, 1998, the plaintiff continued to have neck, jaw and back pain after multiple treatments by a massage therapist, physical therapy, osteopathic manipulation and chiropractic treatments. She complained that she had difficulty performing normal activities of her daily life. The doctor found full range of motion of her jaw with pain over the bilateral TMJ and moderate neck stiffness with tenderness and spasms. There was normal range of motion in her neck. There was continued tenderness on light palpation in her back. A secondary assessment included depression with anxiety.

The reports of plaintiff's personal physician continued with an assessment of anxiety with panic attacks. On March 10, 1999, depression/anxiety/adjustment disorder; on March 20, 2000, sinusitis; on March 13, 2001, skin lesions; on May 23, 2001 and September 13, 2001, depression. On January 9, 2002, she complained of depression which she attributed to her ongoing musculoskeletal dysfunction which she claimed to have been experiencing since her motor vehicle accident. Upon examination, she was found to have cervical, thoracic, lumbar and sacral tenderness present with light palpation with some spasms in the middle and lower back. The assessment included major depression/anxiety secondary to ongoing musculoskeletal dysfunction. On January 31, 2002, and March 19, 2002, she was treated for depression and anxiety and on July 18, 2002, she visited the doctor with acute back pain. He noted pain in the shoulder provoked by lateral bending of the neck. The plaintiff reported that her headaches had been more frequent in the previous four weeks for the reason which she could explain other than the impact of her motor vehicle accident. Again, she had

tenderness in her back. On August 19, 2002, she visited the doctor for back pain and exhibited some cervical limited range of motion based upon discomfort.

On November 12, 2002, the plaintiff complained to her doctor of moderate pain in the right shoulder and anterior chest wall on the right side close to the clavicle. She advised that the pain radiated to the neck on her right side including the trapezius. The plaintiff further advised that all of this started after she was involved in the motor vehicle accident several years previous. The doctor found that she had a tender right shoulder, non-swollen, and that the range of motion was limited secondary to pain. The doctor attributed it to internal derangement, tendonitis, bursitis and made arrangements for an orthopedic consultation. This took place on December 12, 2002, when the orthopedic physician diagnosed adhesive capsulitis, progressive with inflammation and he performed an injection. The history provided by the plaintiff to the orthopedic physician was that she had developed pain in her right shoulder in late August but she noted that before August, she did not have full range of motion since the accident of 1996.

On March 24, 2003, the plaintiff was seen by her personal physician for major depression and anxiety and on June 3, 2003, plaintiff consulted with her physician for anxiety. Her physician noted a significant history of anxiety in the past. The doctor further noted upon plaintiff complaining of her shoulder pain that she had not seen a doctor to whom she was referred for a follow-up. She had not kept up with the physical therapy as well. The diagnosis continued to be major depression/anxiety with panic attacks of increased frequency and bilateral, cervical, thoracic and trapezius strain.

In October of 2002, an osteopathic physician conducted a permanent impairment rating examination of the plaintiff. This physician reported that the plaintiff had

somatic dysfunction of the cervical and thoracic spine which was chronic as well as impingement syndrome of the right shoulder. He found the somatic dysfunction to the cervical area to be equivalent of a 5% whole person impairment, and the 14% upper extremity impairment equivalent to 8% whole person impairment. What he concluded were tension/type headaches amounted to a 5% whole person impairment. Combining the three, he opined a 17% whole person impairment.

In addition to the visits and treatment by her personal physician, the plaintiff was treated on 40 occasions by a chiropractor during the period April 1997 through March of 1998. She was treated on 10 occasions by a different chiropractor during the period October 1998 to December 2003. She underwent an MRI diagnostic study in July of 1997 with respect to her cervical and thoracic vertebrae and a second MRI in April of 1998 with regard to her TMJ. She underwent six visits with a physical therapist between December of 2002 and January of 2003.

At the time of the motor vehicle accident, the plaintiff had experienced a significant medical history going back to a 1984 whiplash injury. She had a 20-year history of anxiety and panic attacks for which she was receiving medication. She had concerns over her family history of heart disease. She was being treated by an osteopathic physician whom she subsequently married and from whom she had received a period of spousal abuse for which she received medical treatment. In 1994 and 1995, the circumstances had reached the point where she had panic attacks just visiting her ex-husband, developed an indifference and aversion to work, and sometimes found it difficult getting out of bed. Going back to 1986 with her, later to be, husband, who was treating her for anxiety and headaches, she complained of neck and shoulder stiffness. There were occasions when she could not work and could not sleep and had tightness in her upper back. She was involved in a motor vehicle accident in

1987 in which her neck, upper back and shoulder were stiff and sore. She had upper back stiffness and headaches in 1988 for which she was treated. In 1989, she had a sore neck and upper back and tightness for which she was treated. She was treated for shoulder, arm, chest and upper back pain after playing tennis in 1989. She was treated for headache, sore neck, and sore shoulder in 1990 after moving furniture and on other occasions. In 1991, she complained that her ribs, chest, neck and back were very sore. On April 20, 1991, she complained that her neck was painful and that her jaw hurt. She was diagnosed by her doctor has having acute stress and TMJ. In September of that year, she complained that her neck, upper back and hands were very stiff and sore and the diagnosis continued as tension syndrome and TMJ. In 1992, she complained of headaches, stiff neck and sore upper back.

On January 31, 1991, the plaintiff was treated by a different osteopathic physician as a result of her living with her then treating osteopathic physician. She complained of spousal abuse and, more specifically, diffuse upper back and neck pain. The doctor found whiplash symptoms and spinal spasms. He found painful forward and backward bending of the head but within normal limits. Plaintiff was further seen by this osteopathic physician for a period in 1993 through 1996.

In spite of the extensive medical history of doctor visits by the plaintiff during the years preceding this accident in which it is clear that her diagnosed and well substantiated anxiety, depression and panic disorder was affecting those areas of her anatomy at issue in this case, plaintiff was also very active intellectually, professionally and physically. She had many accomplishments through college and had a successful career as a medical administrator prior to attending law school. She was an excellent law student and had many extracurricular achievements. She was physically active as a runner, tennis player, skier and dancer and worked at maintaining physical condition.

She was a licensed pilot. She was very active and achieved success in the private practice of law as a sole practitioner. Indeed, many of the physical ailments which she suffered during these pre-accident years were the result of athletic activities, heavy lifting, carrying of briefcases, lifting her baby and the like. It also appears clear that for a period for approximately two years prior to October of 1996 while plaintiff was treated for her anxiety, depression and panic disorder there appeared to be little or no medical treatment for physical injury.[1]

In 1991, the plaintiff was seen by a psychologist for a single session of individual psychotherapy. She presented a history of panic attacks and depression and described herself as a "basket case." The marriage was falling apart and her husband was physically abusive. Her history included psychotherapy for anxiety and depression while plaintiff was in college and treated by therapists. She had full blown panic attacks during her last year in law school and described a disturbing childhood including physical and sexual abuse, intimidation and alcoholism. The diagnosis was anxiety disorder, not otherwise specified, and with panic attacks moderate to severe, adjustment disorder with mixed emotional features and moderate dysthymia.[2]

Plaintiff returned to the psychotherapist in September of 1998 complaining of recent increases in anxiety and depression. She had become divorced in 1995 and was having a continued acrimonious relationship with another man. She had been involved in the motor vehicle accident in October of 1996 and had continued chronic pain. She indicated that her worst period post-accident was in March of 1998 following a change

---

[1] There also was a period after the accident of a couple of years where the medical records are devoid of complaints by the plaintiff of symptoms which she attributes to the motor vehicle accident. The defendant argues this is evidence of lack of continuing injury. The plaintiff argues that she had reached a maximum level of medical improvement and therefore did not feel it appropriate to complain. Defendant argues that if that is the case, she must have had her symptoms during the two years without medical treatment prior to the accident.

[2] Depression.

in medication. She claimed that she had chronic pain, fibromyalgia and myofacial syndrome. At that time she advised the psychotherapist that she had had one or two panic attacks per year since the automobile accident. She described a stormy relationship with a man which resulted in her filing a lawsuit against him in March of 1998 and that man, in turn, filing a complaint with the Board of Overseers of the Bar. She advised that the lawsuit was settled in June of 1998 but that another complaint had been made with the Board of Overseers of the Bar in May of 1998 regarding an earlier legal matter. At the time of the visit, the Board of Overseers of the Bar was proceeding with action on the complaint.

In May of 1997, she engaged in a shoplifting incident at a local supermarket to which she pled guilty attributing to the circumstances to a panic attack. She described visits to the emergency room in January of 1998 for anxiety and depression. She indicated she was troubled by the chronic pain but felt that she generally managed the panic and anxiety in a reasonable manner.

The plaintiff continued her visits with the psychologist until December of 2003 including a psychiatric referral. The psychotherapy visits indicated continued anxiety, negative memories, complaints of the litigation process in this case, stress and pain. In April of 2003, plaintiff advised the psychotherapist that she was flat, emotionless, had no motivation but was functioning somewhat. In his notes, the therapist commented: "But she isn't – she giggling, laughing, affected just fine." He further notes there was a distinct contrast between the super intense presentation and now.

The psychotherapist testified at trial. His conclusion was that plaintiff's chronic pain lowered her ability to handle the many stressors in her life. He concluded that plaintiff's mixture of pain, anxiety, and depression makes her nonproductive and

having a sense of being a failure. He admits, however, that plaintiff has not followed the recommendations of the psychiatric referral.

Two independent medical examinations were conducted. A physiatrist testified that he conducted an exam in 1998 at which she complained of neck and shoulder pain, weakness and sleeping problems which she described as not having existed prior to the motor vehicle accident. The doctor had certain medical records of a chiropractor, physical therapist, emergency room and dentist. He did not find evidence of adhesive capsulitis and diagnosed myofacial pain syndrome.[3] It is a diagnosis of exclusion without definitive criteria, it definitely exists but for which there is no definitive treatment and is primarily based upon anecdotal complaints plus pain upon examination.

The original IME had been completed at the request of the plaintiff's own insurance carrier based upon a claim. After initiation of the litigation, defense counsel requested the same physiatrist to examine medical records not in his possession at the time of his original examination and diagnosis. Where the physiatrist had originally attributed the myofacial pain syndrome to her accident, after examining additional medical records, he concluded, and testified, that while the accident had sufficient trauma to have caused temporary exacerbation of a clearly underlying preexisting condition of myofacial pain, he could not say that the sole cause of the plaintiff's current symptoms was the motor vehicle accident because of plaintiff's unreliability as a medical historian. The doctor pointed out contradictions in history given by the plaintiff where the records reveal similar complaints of pain prior to the motor vehicle accident. While her treating medical providers testified that plaintiff was a reliable medical historian, the psychotherapist found to the contrary and that after his interview

---

[3] "Myo": muscle; "fascia": connective tissues

and subsequent examination of the records she had not reliably provided the history. Therefore, he concluded, he could not find the motor vehicle accident as the sole cause but admitted it could be a contributing factor.

The second independent medical examination was conducted by a neurosurgeon who conducted the examination in June of 2003 and he conducted an extensive examination of all medical records. This neurosurgeon, of significant education and experience, found the plaintiff's musculoskeletal and neurological examination to be completely within normal limits.[4] The doctor indicated he could not substantiate plaintiff's complaints by objective examination. He advised that the plaintiff declined to elevate her right arm above the shoulder level but found she had unrestricted motion of her arm in other directions. He concluded from all available information that the plaintiff could not have sustained an injury at the time of the accident significant enough to result in an impairment of the movements of the right shoulder. He noted that between 1986 and 1991 she was seen 18 times by her doctor because of shoulder and arm pain.[5] He concluded that the plaintiff's restrictions of motion in her right shoulder joint were not related to the accident but causally related to lack of exercise and lack of use of the right shoulder joint.

While there is significant dispute between this neurosurgeon and the other medical witnesses as to whether it would require external sign of injury in order to have scar tissue in the shoulder joint, the court observes the complete lack of evidence of trauma to the shoulder at the time of the accident but significant soft tissue strain to the neck muscle running to the shoulder. On a number of occasions, plaintiff's complaint of shoulder pain is the result of movement of her neck, particularly laterally. Such

---

[4] At trial and in consultation with her psychotherapist, plaintiff complained of the shortness of this doctor's physical examination. As an experienced trial attorney, she described him as "a hired gun."
[5] The court notes that some of the entries in the records were for left shoulder pain.

being the case, this court can reasonably infer that the pain in the neck caused the plaintiff to minimize her use of the shoulder joint. This would be consistent with the neurosurgeon's conclusion that lack of activity would cause the adhesion. The physiatrist made it clear that adhesive capsulitis is caused by scar tissue in the shoulder joint and there is no testimony from any source as to what would cause that scar tissue under the facts of this case. Therefore, this leaves the court to conclude that there may be some limitation of movement in the right shoulder but that it is attributable to the chronic pain of the neck.

The neurosurgeon noted that in the years 1986 through 1991 prior to the motor vehicle accident, the plaintiff was treated 42 times because of neck pain, 27 times because of low-back pain, and 31 times for upper back pain. The court does not find this particularly significant with respect to whether or not she clearly suffered aggravation of a preexisting condition at the time of the accident. What is more troubling is the plaintiff's failure, or refusal, to include in her medical history the previous treatment. The neurosurgeon notes that the patient's complaint of serious injury to her TMJ would appear to be contradicted by the plaintiff's failure to follow medical and dental advice with respect to treatment of the condition.

In the final analysis, it is the opinion of the neurosurgeon that the plaintiff did sustain musculo-ligamentous injury to her neck and back but that these injuries did not play any significant factor a few months following the accident. He attributes the present complaints of chronic pain as a continuation of the problems aggravated by depression and panic attacks experienced by the plaintiff prior to the accident. He further disputes any evidence of permanent impairment utilizing the same standards as that of the plaintiff's impairment rating.

In this action, plaintiff seeks damages for injury to her TMJ, a "frozen" shoulder, and neck and back pain which she asserts are new injuries and not aggravations of a preexisting injury. She seeks damages for her depression, her anxiety and her panic disorder as aggravations of preexisting conditions caused by the defendant's negligence. She seeks payment of her medical bills, damage for pain and suffering, for loss of employment and termination of her legal career, disfigurement and permanent impairment seeking an amount in excess of one million dollars. The defendant admits that plaintiff suffered soft tissue injury in this accident, does not deny negligence or that it was a significant impact. He complains that plaintiff has not presented a credible medical history, that there are gaps in her medical treatment attributable to termination of injury, that plaintiff has failed to mitigate her injuries and follow treatment advice, that she has failed to provide medical proof of causation of her chronic pain attributable to the motor vehicle accident and that she is not a credible witness to her present condition.

It is clear that on October 28, 1996, the plaintiff was subjected to a substantial force to the rear of an automobile she was operating sufficient to economically destroy the vehicle. She suffered severe injury to the ligaments, muscles and connective tissue in her neck and her back. It is not more likely than not that she hit her head, most particularly her jaw, on the steering wheel. She denied hitting the steering wheel to the emergency room personnel and to her personal physician. There was no evidence of an external trauma to her face or jaw. While she complained of jaw pain, there is no evidence that the pain was caused by anything other than the whiplash effect. She made no mention of striking the steering wheel for seven days following the accident. Six months later she told a chiropractor that the right side of her face and jaw struck the steering wheel not once but twice. Plaintiff advised that same health care provider that

she had never experienced TMJ pain prior to the accident yet was treated by her personal physician and later husband many years before for TMJ pain. She advised the chiropractor that the impact was such that she thought her jaw had been broken but never mentioned the impact to the emergency technician or to her private physician the next day. While she felt a panic attack coming on immediately following the collision, she took her prescribed medication and the attack went away. There is no evidence that she was under the influence of the medication sufficient to effect her immediate history in the emergency room. While a neurologist's examination upon referral suggested that her headaches some significant time later were attributable to a post-concussive syndrome, the physician examining the history for purposes of an impairment rating described them as tension headaches. The conclusion, quite simply, is that the plaintiff suffered a severe soft tissue strain which developed into the myofacial chronic pain syndrome.

There is no evidence that plaintiff suffered an injury to her shoulder but there is medical evidence that the injury to her neck affected her trapezius and that certain movement of the neck caused pain in the shoulder. While this is evidence to conclude limitations of motion in the shoulder, it does not appear more likely than not that an adhesive capsulitis condition in the shoulder is attributable to this action.

There is a large volume of medical and chiropractic evidence in this case. In the final analysis, there is agreement that the defendant suffered a strain to her neck and back. While much of the medical evidence tries to provide causation based upon the nonexistence of symptoms prior to the accident and the onset of symptoms after the accident, none of the myriad symptoms described are medically explained beyond the soft tissue injury. Furthermore, there is a complete lack of credibility in the history provided the plaintiff to the medical providers as to her previous conditions of neck

and back pain occasioned by stress, hard physical exertion[6] and anxiety. It is even noted by the physical therapist shortly after the accident that plaintiff's symptoms were somewhat attributable to her poor posture and that the plaintiff acknowledged that condition. While the physiatrist's conclusion is that he cannot provide causation because of the lack of adequate medical history, the court is satisfied, from all of the known evidence, that there were preexisting physical and psychological conditions, that they were sufficiently severe to occasion medical treatment, that they were somewhat caused by and certainly aggravated by the psychological, and possibly psychiatric, conditions but that those conditions were severely aggravated by the serious motor vehicle accident in October of 1996.

In addition to the injuries received with the attendant limitations of motion and pain and suffering, the plaintiff complains that her legal career was terminated as a result of this accident both physically and psychologically. In this regard, the court has the unique opportunity to examine independent findings, based upon the same preponderance standard, to analyze plaintiff's case, not only in her claim for loss of her legal career but also her credibility as a witness and as a medical historian.

By findings, conclusions and order of November 16, 1999, an Associate Justice of the Maine Supreme Judicial Court, ruling on an action brought by the Board of Overseers of the Bar, found the plaintiff was unfit for the practice of law and ordered her to be disbarred. There were eight areas of concern brought before the court at its hearing. These included a shoplifting incident, five legal matters handled by the

---

[6] In November of 1996, the physical therapist notes, in addition to the poor posture, the plaintiff was a very slight woman with very little muscle mass. Certainly heavy lifting, twisting and lifting a baby, spousal and domestic physical violence, would have greater effect on a slight woman with little muscle mass than otherwise.

plaintiff in her capacity as an attorney,[7] her dealings with the Board of Overseers and her behavior with regard to the proceedings before the Supreme Judicial Court. Indicative of her behavior during the period in question with regard to her legal matters, was plaintiff's refusal to answer telephone calls, acknowledge mail and otherwise make herself unavailable to clients and the court. She did not attribute these failings to her physical condition, her pain or her anxiety but she blamed the failings on others including the Board of Overseers, the District Attorney, the court, and a broken mailbox. The court found that the plaintiff's approach to her problems and her failure to comply with court requirements was to minimize the problems in an attempt to shift the blame to others. However, and extremely significant to the present case, the court found in some instances, most notably a case involving a lawsuit dealing with a "gentlemen friend," as well as another legal matter, she did make herself available and to respond and react appropriately. The court said, "This demonstrated capacity to act and respond renders her failures in the other cases all the more serious." This finding raises serious questions in the mind of this court as to whether her attribution of disbarment to this accident is credible or simply convenient. In addition, the court notes her complaint to the psychotherapist some period prior to the motor vehicle accident that her psychological condition sometimes caused her not to want to get out of bed and go to work affected primarily from her relationship with her then or ex-husband.

On the issue of credibility as a witness, the plaintiff was faced with the shoplifting incident. There does not appear to be any question but that she was distracted by an emotional condition, that she suffered, as she described, an anxiety attack, and that she left a store without paying for certain items. The Justice's decision

---

[7] Including deception and misrepresentation to clients.

found that she had made representations to the District Attorney that she would participate in a community service program in order to divert the charge and avoid a criminal complaint. The court found that she did not fulfill the commitments made to the District Attorney and was charged accordingly. She pled guilty. However, at various times the plaintiff has denied that she received a criminal conviction and has asserted that the matter was disposed of. The facts are otherwise. Furthermore, the plaintiff insists that the Supreme Court Justice absolved her of the charge. As an educated attorney, the plaintiff is well aware that the Court simply found that the shoplifting circumstances was not a violation of the bar rule, ". . . because of the emotional condition that precipitated this event, . . ."

This conclusion raises another issue with regard to the credibility of plaintiff's claim. Nowhere in the Disbarment Decision by the Supreme Court Justice is any mention of plaintiff's motor vehicle accident which is at issue in these proceedings. The court would assume that a person who finds that all of their difficulties, most particularly, their professional difficulties, stem from a single motor vehicle accident and attendant injuries, would make it clear to the court that her failure to abide by the Bar Rule, to have been convicted of shoplifting, to neglect client's cases, to refuse to answer phone calls and mail, would be related to the chronic pain syndrome suffered at the time in question. The court asked the plaintiff at time of this trial during her testimony if the Supreme Court Justice was even aware of her motor vehicle accident and she testified that he was and that she had discussed it with him. Since the court found that her emotional condition excused her from the violation of the Bar Rule from the shoplifting incident, it is incredible that the Court would not have found some temporary condition subject to resolution affecting her fitness to practice law based upon the chronic pain syndrome. Or, expressed another way, the court would not have

found the plaintiff unfit but would have simply temporarily suspended her from the practice of law to give her an opportunity to address her physical and mental problems. It certainly would have mentioned the facts in mitigation in its decision. This lack of finding of any role of the motor vehicle accident in her unfitness to practice law severely diminishes the likelihood that the destruction of her professional career arises out of the injury suffered from the negligence of the defendant and the court cannot so find. However, this does not cause the court to conclude that her ability to practice law was not affected in any way since she does still suffer from the chronic pain.

In 1990, plaintiff was engaged in the sole practice of law in Augusta and had gross receipts of $117,000. After deduction of business expenses, her net income was $67,000. She filed a joint return with her husband. In 1991, the plaintiff generated gross receipts of $93,000 with a net profit of $41,000. In 1992, plaintiff realized gross receipts in the amount of $41,000 and a net income of $3,500. In 1993, the plaintiff generated gross receipts of $72,000 and realized a net profit of $30,000. This IRS return was the last joint return with her husband and for 1994 plaintiff submitted an individual income tax return. This revealed gross receipts of $63,000 with a net realization of $23,000. In 1995, plaintiff reported $37,000 in gross receipts with a net profit of $4,000 after all business expenses. Wages paid were in the amount of $3,309. For the year 1996, the year of the motor vehicle accident in question, the plaintiff reported gross receipts of $21,802 with a net profit of $852. A significant expense was depreciation but there was no expense deductions for wages.

Plaintiff was divorced from her osteopathic physician husband by judgment of November 22, 1994. A child support worksheet submitted attributed annual gross income to the plaintiff of $36,300. In plaintiff's answers to interrogatories propounded by defendant in the instant case and executed by the plaintiff on March 15, 2002, she

concludes that while her income has varied, that it should be deemed about $37,000 per year because that was the amount used in her divorce. On August 26, 1996, some two months prior to this motor vehicle accident, the Superior Court entered an order on plaintiff's ex-husband's motion to modify the divorce judgment respecting support and alimony. The findings and order indicated that a hearing was held with both parties present and represented by counsel. The court noted that at the time of the divorce the husband's income was $90,000 and the plaintiff's income was $36,000. In her analysis of the issues presented before it, the court noted that Ms. Zeegars's income in 1995 was $12,996, the plaintiff declined to estimate her income for 1996 but the court found it to be $13,000 per year. Since there is no evidence of the income of the plaintiff subsequent to October 1996, the court concludes that the gross income reported on her income tax return of $21,802, the net income of $852, and the lack of payment for wages, suggest a reduction in the earning capacity of the plaintiff existed prior to the motor vehicle accident. Even if the court assumes that plaintiff was capable of maintaining her level of income as it existed at the time of the accident to the remaining months of the year, an extrapolation would only suggest an income of $26,400 as an estimate. This would suggest that non-motor vehicle negligence created circumstances for that year were affecting her ability to generate an income. Of course, an income tax return contains business expenses which are deductible including depreciation and expenses for a home office. Income evidence in relation to an alimony and spousal support proceeding provide emphasis on net profit rather than gross receipts.

At the time of the defendant's negligence in October 1996, the plaintiff had bodily and psychological conditions that made her more susceptible to injury than a person in good health notwithstanding the history of significant physical activity. On that basis, the plaintiff is entitled to compensation for all those particular damages

caused by the defendant's negligence even though her injuries may have been aggravated or rendered more serious by reason of a preexisting condition. However, the defendant has asserted other events or injuries affecting the plaintiff's condition or losses and the defendant has the burden of proving by a preponderance of the evidence that all or any portion of the damages or losses resulting from the other events or injuries were not caused or aggravated by the defendant's fault. The court finds that the defendant has met its burden of establishing that a portion of plaintiff's damages are attributable to other events or conditions. While plaintiff's psychological infirmities existed prior to the accident and were somewhat debilitating prior to that time, certainly the conditions were aggravated post October 1996. However, they were also aggravated by other circumstances including, but not limited to, relationship with her abusive former husband, maltreatment by a live-in gentlemen friend and litigation arising therefrom, and the stresses of the practice of law. To whatever level of pain the plaintiff suffers from the myofacial pain syndrome at the present time, her underlying psychological condition does not allow her to "live with it."

There is a duty on someone who is injured to exercise reasonable care to diminish or mitigate the damages resulting from the injuries. Plaintiff is obligated under the law to take such steps that are reasonable or prudent to affect a cure for the reduction of the severity of her injuries. There are numerous examples of plaintiff failing to follow clinical advice including, but not limited to, an established physical therapy program, referral to an orthopedic surgeon, referral for psychiatric treatment, and further physiatrist analysis. As a consequence, she has convinced herself that nothing will work. Based upon the observations by the plaintiff as contained in the psychotherapist's notes, the court may reasonably infer that the conclusion of this present litigation will also have a positive effect.

Reasonably concluding an effective reduction in earning capacity of $10,000 year and with 17 years of working life expectancy, the plaintiff has and will suff $170,000 in lost earnings. Disregarding those expenses the court finds are not clea attributable to the circumstances of defendant's negligence, the court finds plaintiff entitled to medical reimbursement for medical expenses in the amount $12,075. Bas upon those past medical expenses, the plaintiff's present condition and those facto that are attributable to the negligence, the court finds plaintiff is entitled to futu medical expenses in the amount of $6,000. Considering the injuries suffered by t plaintiff, her fragile condition, the independent activities aggravating her condition addition to the aggravating factor of the motor vehicle negligence, the credibility of t plaintiff and the failure to mitigate by following recommended referral and treatment some extent, plaintiff is entitled to damages for pain and suffering in the amount $50,000.

The entry will be:

Judgment for plaintiff in the amount of $238,075 and her costs.

Dated: August 12, 2004

Donald H. Marden
Justice, Superior Court

DONNA L ZEEGERS - PLAINTIFF

Attorney for: DONNA L ZEEGERS
SUMNER LIPMAN
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

Attorney for: DONNA L ZEEGERS
WILLIAM ROBITZEK
BERMAN & SIMMONS
PO BOX 961
129 LISBON STREET
LEWISTON ME 04243-0961


vs
BRAIN M SYMONEVICH - DEFENDANT
RR#3,BOX 6040
WATERVILLE ME 04901
Attorney for: BRAIN M SYMONEVICH
WILLIAM KELLEHER
OFFICE OF WILLIAM J KELLEHER
7 EAST CRESCENT STREET
AUGUSTA ME 04330

PATRICIA SYMONEVICH - DEFENDANT

Attorney for: PATRICIA SYMONEVICH
WILLIAM KELLEHER
OFFICE OF WILLIAM J KELLEHER
7 EAST CRESCENT STREET
AUGUSTA ME 04330

JOHN SYMONEVICH - DEFENDANT

Attorney for: JOHN SYMONEVICH
WILLIAM KELLEHER
OFFICE OF WILLIAM J KELLEHER
7 EAST CRESCENT STREET
AUGUSTA ME 04330

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2001-00264

**DOCKET RECORD**

Filing Document: COMPLAINT
Filing Date: 12/12/2001

Minor Case Type: AUTO NEGLIGENCE

## Docket Events:

12/12/2001 FILING DOCUMENT - COMPLAINT FILED ON 12/12/2001

12/12/2001 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 12/12/2001
        MAILED TO PLAINTIFF, DONNA ZEEGERS.

12/12/2001 Party(s):  BRAIN M SYMONEVICH,PATRICIA SYMONEVICH,JOHN SYMONEVICH
        SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 12/12/2001
        SUMMONS SERVED ON BRIAN M.,PATRICIA & JOHN SYMONEVICH.